RAMSEY v. PHILLIPS.

(Supreme Court, Appellate Term.   February 18, 1910.)

·COURTS (§ 189*) — MUNICIPAL COURTS — NEW TRIAL—NECESSITY FOR SETTLED CASE.

A motion for a new trial for newly discovered evidence in the Municipal Court must, under Municipal Court Act (Laws 1902, c. 580) § 254, be pre- sented on a settled case.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 189.*]

Lehman, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fifth Dis- -trict.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Harry T. Ramsey against George T. Phillips. From a judgment for plaintiff, and an order denying a new trial for newly discovered evidence, defendant appeals. Affirmed.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

Harold G. Mitchell, for appellant.

J. S. & H. A. Wise (John S. Wise, Jr., of counsel), for respondent.

SEABURY, J. This is an action to recover for services rendered. The case was tried before the court without a jury. The appeal presents no question of law, not a single exception having been taken by the defendant, nor was any motion made to dismiss the complaint.

The judgment is challenged solely upon the ground that it is against the weight of evidence. The court below, in whose presence the witnesses gave their testimony, was much better able to judge of the credibility of the witnesses than are the justices of this court, who have only the typewritten record before them. I can discover no good reason why we should substitute our judgment upon the facts for that of the learned trial judge.

After the time had expired within which the defendant had a right to move for a new trial, the defendant made such a motion. The defendant also moved to set aside the judgment upon the ground of newly discovered evidence. This motion, not being made upon a settled case, was properly denied. Section 254, Municipal Court Act; Altmark et al. v. Haimowitz, 55 Misc. Rep. 195, 105 N. Y. Supp. 205.

The judgment and order should be affirmed, with costs.

BIJUR, J., concurs.

LEHMAN, J. (dissenting). The plaintiff, a man who had some experience in selling cement company bonds, was out of work in August, 1909. At that time he was approached by the defendant and asked to go to Bridgeport upon a proposition in which defendant was interested. The apparent purpose of the suggested visit to Bridgeport was to obtain a contract from a partnership doing business under the name of Neolithei Supply Company to transfer their business to a corporation and to pay the promoters a large bonus for selling stock in the proposed corporation. The plaintiff claims that the defendant said, "I will give you $100 a week; you go ahead, and see this contract," and that he worked unsuccessfully on the proposition for three weeks, going four times to Bridgeport, and has been paid only $30. These $30 were paid to him for expenses, but he claims that they were paid upon the express understanding that they represented only a payment on account.

The defendant testified: That the plaintiff told him he was out of work. That the next day the Bridgeport matter came up, and he sent for plaintiff. That he told the plaintiff about the proposition, and gave him $5. Plaintiff said he could not work for $5 a day, and defendant answered:

"It is not to pay you time, but to pay your expenses, which are only $2."

The next week plaintiff reported that he thought he could make a deal. That defendant told plaintiff that if he could get the Bridgeport parties to enter into a contract they would be partners. That he would furnish the money to organize the company, and plaintiff was to devote his time to selling the stock. Thereupon a draft contract was drawn up between plaintiff and defendant, as parties of the first part, and the Bridgeport firm, as parties of the second part. Subsequently defendant advanced on two occasions a total of $25 for expenses, and on one occasion plaintiff remarked:

"I will give you a check for it, if you want it."

About two weeks after the matter had come up, plaintiff said:

"If this matter goes through, what are you going to advance me to get out and sell this stock? You know my expenses. It will cost me $100 a week."

And defendant answered:

"All right, Harry; I will give you more than that if you need it, when we get this stock on the market and you get out and sell it."

In rebuttal the plaintiff contradicted the defendant on all important points, and stated that the conversation after the first visit to Bridgeport was that he told defendant that it was a good proposition, but he had no money to put against it, and must eat while he was doing work. Defendant asked what his expenses approximately were, and he told him $90 to $100, and defendant answered:

"Very well, I will give you $100 a week. Go ahead, and get this contract, if you can."

He admits, however, that after the contract was signed they were to be partners.

I cannot find that the conversation is inconsistent with defendant's story that the plaintiff was to be advanced $100 for expenses in selling stock after the contract was in existence, but not for services in procuring the contract. In this regard it must be noted that this conversation took place only after the first visit to Bridgeport. Plaintiff was, therefore, apparently willing to enter into negotiations with the Bridgeport parties before he had obtained any agreement for compensation, and it was only after success seemed probable that he raised the question of how he would live while working under the contract, saying:

"It is a good proposition; but I have no money to put against it, and I must eat while I am doing work."

If, however, the conversation as testified to by defendant is open to the construction that he was to be paid $100 a week before the Bridgeport parties entered into the contract, then there is a direct conflict of testimony between defendant and plaintiff. Plaintiff's testimony is uncorroborated, and in view of the fact that concededly he received $30 for expenses and that he was to be a partner of defendant if the contract was signed, his story that he was to be paid $100 a week for his services in going to Bridgeport a few times to discuss the proposition with definite parties there, with whom he was apparently not even ac-

quainted, is not so probable that we can hold that he has borne the burden of producing a preponderance of evidence.

The judgment should therefore be reversed, and a new trial granted, with costs to appellant to abide the event.